IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| T&C Leasing, Inc., : | |
| : | Civil Action No. 1:09-cv-873 |
| Plaintiff : | |
| : | (Chief Judge Kane) |
| : | |
| v. : | |
| : | |
| BBMC, LLC and JED BECKMAN, : | |
| : | |
| Defendants : | |

# ORDER

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Before the Court is Plaintiff T&C Leasing's ("T&C") motion for issuance of a writ of seizure. An evidentiary hearing was held on this matter before the Court on June 11, 2009. For the following reasons, the Court will issue a writ of seizure.

**I.  FINDINGS OF FACT**

Based upon the testimony and exhibits presented at the hearing and the pleadings to date, the Court makes the following findings of fact on the preliminary issue of whether a writ of seizure should issue in this case:

1. T&C Leasing is a corporation organized under the laws of the state of Texas, with its principal place of business located in Austin, Texas.

2. Defendant BBMC, LLC ("BBMC") is a limited liability company organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business located in Hanover, Pennsylvania.

3. Defendant Jed Beckman ("Beckman") is an individual residing in Gettysburg, Pennsylvania.

4. By a lease agreement ("Lease") signed on September 26, 2008, titled "Equipment Lease Agreement" and referenced as agreement number "TC080916-1," T&C leased the following items to BBMC: (a) one 2006 Cincinnati 165 ton CNC Press Brake & Control,

serial number 31630; (b) one Burgmaster 6 spindle drill press; (c) one Miller Synchrowave 285 Welder; (d) one Pallet Jack "2 ton"; and (e) one lot of miscellaneous carbide tooling & drills. The equipment was leased in return for 36 monthly payments of $2,184.66 along with a $4,500.00 security deposit. Beckman signed the lease agreement on behalf of BBMC as CEO.

5. In paragraph 2, the Lease provides that the Lessee must pay interim rent equal to 1/30th of the monthly rental, multiplied by the number of days elapsing between the date of which Lessee accepts the equipment and the commencement date of this Lease. It further provides that subsequent rental installments will be payable on the first day of each rental payment period beginning after the first rental payment period. If the rental payment is late, the agreement further provides that a late fee of 15 percent of the payment which is late will be assessed.

6. In paragraph 12, the Lease provides that the Lessee shall be in default under the lease if the Lessee fails to make any payment due under the terms of the Lease for a period of five days from the due date.

7. In paragraph 13, the Lease provides that if the Lessee is in default and the default remains uncorrected, the Lessor shall have the right to, *inter alia*, enter upon the Lessee's premises and repossess and remove the equipment, either with or without notice to the Lessee.

8. In a document titled "Collateral Addendum As Additional Security Deposit," dated and signed on the same day as the Lease, T&C is granted a secured interest on the following tangible property that Beckman owned as an additional security deposit on the Lease: (a) one MG Systems 5' x 25' CNC plasma table with Hypertherm Powermax 1650 power unit model: MG525 MFG 2004, serial number SM750P-98-996; and (b) one OTC Robotic Weld Cell dual station unit with touch screen control and VX-6 series Robotic arm, model VX-6, MFG 2008, serial number WCM43742-192-66348. In the event of a default, the agreement provides that this property would be "at risk," making it subject to forfeiture and/or auction to satisfy any and all outstanding debt owed by BBMC.

9. Beckman also agreed to provide a personal guaranty of full and prompt performance of every obligation of the Lessee under the Lease.

10. T&C filed a UCC1 Financing Statement with the Pennsylvania Department of State evidencing its interest in the above mentioned equipment.

11. The rent commencement date was October 16, 2008. T&C records show that BBMC's first payment did not come until November 10, 2008, in the amount of $2234.65. At this time, the balance owed on the Lease was $3768.54, consisting of the interim rent of $1,092.33, the normal monthly rent for October of $2184.66, and late fees of $163,85 and $327,70 respectively.

12. T&C's records show that no rent was received from November 10, 2008 to February 23, 2009. On February 24, 2009, one further payment of $1,000.00 was made by BBMC. At that point, the total balance owed by BBMC was $8,893.27.

13. After corresponding with Beckman about a concession on the terms of the rental payments and giving him more time to comply with BBMC's obligations under the lease, T&C informed Beckman on February 23, 2009, that it would need to schedule a date to take possession of the leased equipment as well as the "at risk" equipment offered by Beckman as collateral.

14. Beckman responded to this request, but refused to comply. In his correspondence, he threatened that if T&C did not work with him he could simply liquidate equipment to pay for the lease or that he could lock his property, file bankruptcy, and "wait for the lawyers to work this out."

15. T&C attempted to exercise its right under the Lease to enter Beckman's property and repossess the equipment, but its agent was unable to do so; the agent was not allowed to access the property and a firearm was viewed on a second visit.

16. T&C instituted the above-captioned action on May 7, 2009, and motioned for an evidentiary hearing to determine whether a writ of seizure should issue in this case. The Court granted this request, directing T&C to serve proper notice of this hearing on Defendant BBMC in accordance with Pennsylvania Rules of Civil Procedure 1075.1 and 1353 not less than twenty-four hours before the hearing.

17. T&C hired a process server to comply with this Court's order. The process server attempted to serve notice of the hearing at 320 Maple Avenue Hanover, Pennsylvania—the main address listed for BBMC—but that address was abandoned. Since then, the process servers have tried unsuccessfully to serve Beckman at his personal residence, but he has not been at home.

18. The total market value of the equipment, with depreciation since the filing of the complaint, is between $170,000 and $180,000.

19. There is a reasonable probability that Plaintiff's interest and the property's value would be adversely impacted if the Defendant were allowed to continue to hold and use the property until notice could be served. Additionally, there is a reasonable probability that Defendant would hide, conceal, or waste the property.

## II. DISCUSSION

Issuance of a writ of seizure is controlled by Pennsylvania Rule of Civil Procedure

1075.2, which provides in pertinent part:

> (a) After the complaint has been filed, the plaintiff may move for the issuance of a writ of seizure whether or not the complaint has been served. The court shall fix the date and time of the hearing which shall not be less than forty-eight hours after filing the motion for the writ of seizure. . . .
>
> (e) The hearing shall be held whether or not the defendant or other person found in possession of the property appears. If the court is satisfied that notice as provided by this rule has been given or a reasonable attempt to give notice has been made, it shall determine from the complaint, affidavits, testimony, admissions, or other evidence, whether the plaintiff has established the probable validity of the claim and, if so, it may order a writ.
>
> (f) The failure of a defendant . . . to appear or be represented at the hearing shall not be considered a waiver of any right to defend the action or to file a counterbond.
>
> (g) If the notice of the hearing has not been actually received notwithstanding a reasonable attempt to give notice, the defendant or any other person claiming the right to possession may, within seventy-two hours after seizure, petition to vacate the writ of seizure.

Pa. R. Civ. P. 1075.1; see also Fed. R. Civ. P. 64 ("At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment."). Because T&C is seeking to enforce a security interest that Beckman granted in his property in exchange for the lease, they must satisfy the requirements of 13 Pa. Con. Stat. Ann. § 9203, which provides in pertinent part:

> (a) Attachment. – A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral unless an agreement expressly postpones the time of attachment.
>
> (b) Enforceability.– Except as otherwise provided in subsections (c) through (i), a security interest is enforceable against the debtor and third parties with respect to the collateral only if all of the following apply:

(1) Value has been given.

(2) The debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party

(3) One of the following conditions is met:

(i) The debtor has authenticated a security agreement which provides a description of the collateral . . . .

13 Pa. Con. Stat. Ann. § 9203. Once assets are attached, the creditor gains a security interest in those assets enforceable against the debtor in the event of default; "only through attachment may a creditor gain the right to collect and liquidate specific assets of the debtor."[1] See Interbusiness Bank, N.A. v. First National Bank of Mifflin, 318 F. Supp. 2d 230, 237 (M.D. Pa. 2004).

## III. CONCLUSIONS OF LAW

Based on the foregoing findings of fact and law, the Court makes the following conclusions of law:

1. The Plaintiff has made a reasonable attempt to provide the Defendant notice of the hearing.

2. The allegations of the complaint were properly verified by testimony of Leslie Brown at the evidentiary hearing.

3. The Plaintiff has established the probable validity of their claims to this property through the complaint, testimony, and exhibits. A writ of seizure for the property will issue.

---

[1] Though not currently at issue, the Court notes that "perfection" of a secured interest entitles a creditor "to take 'priority' in the collection and liquidation of the assets of the defaulting debtor as against other creditors with unperfected security interests in the same collateral." Interbusiness Bank, N.A. v. First National Bank of Mifflin, 318 F. Supp. 2d 230, 237 (M.D. Pa. 2004). Among multiple creditors who have attached and perfected their interest in the same collateral, priority is determined by the date of filing of the financing statement. Id. A creditor that liquidates assets in which it holds a subordinate priority may be liable to a creditor with a superior perfected interest. Id.

A cursory search at the Pennsylvania Department of State website, *available at* https://www.corporations.state.pa.us/ucc/soskb/SearchStandardRA9.asp, reveals that three creditors have filed UCC1 financing statements with BBMC named as the debtor. Though it is unclear from the website search what collateral these financing statements cover, the first was filed by "PNC Bank N.A." on March 14, 2008.

4.  As the Defendant did not receive notice of the hearing despite the Plaintiffs' reasonable efforts, Defendant may, within seventy-two hours after seizure, petition to vacate the writ of seizure.

**ACCORDINGLY**, on this 12th day of June 2009, upon consideration of Plaintiff's motion for issuance of a writ of seizure, **IT IS HEREBY ORDERED THAT** the motion is **GRANTED**.

**IT IS FURTHER ORDERED THAT**:

1.  Plaintiff shall post a bond pursuant to Pennsylvania Rule of Civil Procedure 1075.3 in the amount of $350,000.00.

2.  After the posting of the bond, a Writ of Seizure, substantially in the form provided by Rule 1354 of the Pennsylvania Rules of Civil Procedure, shall issue directing the United States Marshal to seize (a) one 2006 Cincinnati 165 ton CNC Press Brake & Control, serial number 31630; (b) one Burgmaster 6 spindle drill press; (c) one Miller Synchrowave 285 Welder; (d) one Pallet Jack "2 ton"; (e) one lot of miscellaneous carbide tooling & drills; (f) one MG Systems 5' x 25' CNC plasma table with Hypertherm Powermax 1650 power unit model: MG525 MFG 2004, serial number SM750P-98-996; and (g) one OTC Robotic Weld Cell dual station unit with touch screen control and VX-6 series Robotic arm, model VX-6, MFG 2008, serial number WCM43742-192-66348.  The Plaintiff shall supply the Marshal with any information that will assist in identifying this property.

3.  The United States Marshal shall serve the Writ of Seizure, together with a copy of this order and the complaint, upon the defendant.

4.  Property taken into possession by the United States Marshal shall be held by the Marshal for 72 hours to allow for the filing of a counterbond pursuant to Rule 1076 of the Pennsylvania Rules of Civil Procedure.  If no counterbond is filed, and no proceedings are pending and undecided under Rule 1075.1(g), the Marshal shall deliver the property to the Plaintiff.

s/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania